IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**TYSON RHAME, JAMES SHAW, and FRANK BELL,**<br><br>**Defendants.** | **CRIMINAL CASE NO. 1:16-CR-00067-SCJ** |

## ORDER

This matter appears before the Court on Defendants' Renewed Motion to Compel Production of Brady Materials and Motion for Sanctions (Doc. No. [455]),[1] *as supplemented at* Doc. No. [610] and Doc. No. [634], and other related motions.

---

[1] A prior emergency motion to compel production of Brady materials had been filed on August 6, 2018. Doc. No. [337]. In response, the Government filed a brief on August 10, 2018 and stated *inter alia*, "[t]he Government hereby confirms that it has already turned over all completed reports of witness interviews, all grand jury transcripts, and all Brady material in its possession (and did so before the defendants filed their motion)." Doc. No. [340], pp. 1–2. The Government also stated: "In short, there is no additional Brady material for the Court to order the Government to produce." Id. at p. 3. The Court declined to find that Defendants had violated its Brady obligation to Defendants, but noted that "if it is determined by the Court during

The motion to compel (at Doc. No. [455]) was filed prior to the start of trial of the above-stated case. Defendants described the late-produced documents at issue as "emails between Sterling customers, specifically customers the government identified on its witness list as supposed 'victims' of the alleged fraud scheme, and FBI and IRS agents that fall squarely within the contours of Brady." Doc. No. [455], p. 1. [2]

---

the trial that the Government has in its possession Brady material that it failed to disclose or provide to Defendants, the Court will consider sanctions." Doc. No. [355], p. 3.

[2] During the pretrial stage of this case, Magistrate Judge Salinas issued an October 28, 2016, order which stated in relevant part,

> The Government, however, is **ORDERED** to turn over Brady materials to the defense, including any grand jury testimony, witness interview reports or summaries, responses to the FBI victim questionnaire, or any other evidence that could arguably support a "good faith" defense or that arguably support Defendants' position that the alleged misrepresentations and omissions were not "material." Such information, if any, must be disclosed within **FOURTEEN DAYS** of this Order.

Doc. No. [133], p. 16 (emphasis in original). While the applicable Order contained a date certain for production in the last sentence, the Court reads the first sentence of the Order as establishing a definition for Brady materials and an implied continuing duty to produce the described materials.

2

A hearing on the motion to compel (Doc. No. [455]) was held on September 6, 2018 in which the Court ruled that the information at issue was "Brady." Doc. Nos. [460], [463], [525-1], T. p. 756, line 22.  The Court also instructed Assistant United States Attorney, Thomas Krepp, "to have somebody go back and look and make sure there is nothing else in those files." Doc. No. [525-1], T. p. 757, lines 16–18.[3]

Additional arguments were made on September 7, 2018 and the Court recognized that a clarification of its initial verbal order finding that the information at issue was "Brady," was necessary.  Doc. No. [526].[4]  Said clarification is as follows:  the Court specifically finds that there was no Brady violation by the Government as outlined in the Defendants' motion, briefing, and arguments concerning Doc. No. [455], because Defendants could still use the information at issue effectively during their cases in chief at trial.  See

---

[3] As stated by the Government, "[o]n September 6, 2018, the Court ordered the Government to review its files to determine if it was in possession of any undisclosed Brady material and to notify the Court of the results of its review by September 11, 2018."  Doc. No. [465], p. 1.

[4] The Court also indicated at Doc. No. [526] that it would circulate (among the attorneys of record) a draft order concerning Doc. No. [455] prior to publication; however, upon further consideration, the Court finds this unnecessary.

3

United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001) ("we reiterate the longstanding constitutional principle that as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner. There is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial . . . ."). The Government did, however, contradict its prior representations (Doc. Nos. [133], p. 6, n.2); [340], p. 1, 9–10) of having produced all Brady material to the Defendants.

On September 10, 2018, the government filed a "Notice of Review of Government's Files Per Court's Order." Doc. [465]. In this notice, the Government stated *inter alia*: "[d]uring the course of review, however, IRS personnel located four MOIs that were inadvertently not produced to defense counsel." Doc. No. [465].

A jury verdict was subsequently returned and the Defendants' post-trial Brady motions and briefs were filed. In their April 10, 2019 supplemental briefing, Defendants state that "[m]onths after the convictions, the government

4

produced 350 customer questionnaire responses that were received by the FBI before trial." Doc. No. [610], p. 1.[5]

The Court held a hearing on April 15, 2019. Doc. Nos. [620], [623].

At the conclusion of the hearing, the Court ordered the following:

> On or before May 16, 2019,[6] the Government shall file a memorandum in which it provides a detailed timeline and explanation of the events that led to the discovery of the additional (before and during trial) customer responses that were located in the pre-trial FBI questionnaire portal. The Government shall also provide access logs (or otherwise show who accessed the questionnaire portal during the course of the pending case). The Government is further ordered to produce all emails, other correspondence, and documents concerning its decision to "shut-down" the pre-trial FBI questionnaire portal following Magistrate Judge Salinas' October 2016 Order.

Doc. No. [617].

On May 24, 2019, the Government filed a report of "Compliance with [the] Court's April 17, 2019 Order." Doc. No. [627]. In its filing, the

---

[5] In a subsequent filing, the Government stated that its review revealed that "370 questionnaires were received between November 7, 2016, and the conclusion of trial (October 5, 2018)" that had not been disclosed to the defense. Doc. No. [627], p. 16.

[6] The Government was subsequently granted an extension of time to May 24, 2019 to comply with the Court's order. Doc. Nos. [624], [625].

5

Government stated that about the time of November 2016, Assistant United States Attorney Thomas Krepp, "recalls orally asking [FBI] Special Agent Baucom to arrange to have the FBI questionnaire portal closed." Doc. No. [627], p. 11. The Government further stated: "Special Agent Baucom does not recall this conversation. AUSA Krepp advised that the next time that he asked for a spreadsheet from the FBI questionnaire portal was in March 2019 after the new sentencing questionnaire was posted and it was discovered that the initial portal had never been closed." Doc. No. [627], p. 11. The Government further stated *inter alia* that "the United States found no evidence that anyone on the prosecution team actually possessed or used information that was submitted through the FBI's questionnaire portal between November 4, 2016, and the end of trial, October 9, 2018." Doc. No. [627], p. 6.

On June 25, 2019, Defendants filed a "Response to the Government's Explanation of the Events that Led to the Concealment of Customer Responses Per the Court's April 17, 2019 Order." Doc. No. [635]. In their response, the Defendants label the Government's brief as "troubling," and note a failure to answer many questions. Doc. No. [635], p. 2. The Government thereafter filed a "Supplement to May 24, 2019 Compliance Report." Doc. No. [641].

6

On June 10, 2019, Defendants filed a Motion to Compel the Government to Comply with the Court's Order" at Doc. No. [617] (Doc. No. [630]).  As stated by Defendants, "[i]n this Motion, we do not ask the Court to form an ultimate judgment on whether a Brady violation has occurred, only that the Government should be required to answer these reasonably necessary questions."  Doc. No. [630], p. 6. Those questions are:

- Did AUSA Krepp, in fact, not inform his supervisors and were they unaware of his alleged "decision?"
- Are there other policies relating to how alleged victim questionnaire portals should be set up, taken, down, or maintained? Were they complied with? If there are no written policies, is deciding to take down a victim questionnaire portal consistent with the USAO's practice in other recent cases?
- Regardless of whether memorialized in the form of "email or correspondence," and regardless of whether "explicit" or "implicit," are there other documents that concern AUSA Krepp's purported reason?
- For example, the Government should be required to produce the emails it identified on page 27 of its Response, where it states that AUSA Krepp was usually copied on emails about updating the USAO's Sterling Currency Group victim web page and approved "the more substantive changes to it." That website contained a link to the customer questionnaire portal. Therefore these emails would seem to

7

> have put AUSA Krepp on notice that the portal was never taken down.
> - The Government filing was couched in terms of "FBI employees" identified "by the FBI" as having permission to access the customer response inbox. Did AUSA Krepp or any other USAO employee also have permission to access the customer response inbox?
> - For the "FBI employees" identified "by the FBI," the Government stated whether or not that person added the customer response inbox to his or her Outlook. The Government did not state whether AUSA Krepp or any other USAO employees added the customer response inbox to his or her Outlook. Did any do so?
> - For the "FBI employees" identified "by the FBI," the Government stated the frequency with which that person accessed the customer response inbox. The Government did not state the frequency with which AUSA Krepp or any other USAO employees with checked the customer response inbox. If any were authorized to access the customer response inbox, with what frequency did they do so?

Doc. No. [630], pp. 4–5 (citations omitted). The Government filed a response to Defendants' Motion to Compel on June 17, 2019, inclusive of a request to seal.[7]

---

[7] In its response, the Government stated: "The United States requests that the Court conduct an *ex parte* review of the information on the CD and that the CD be made a part of the record and placed under seal." Doc. No. [632], p. 6, n.1. Defendants request access to the emails. Doc. No. [633], p. 2. The Court will maintain the documents under a provisional seal at this time; however, the Court must file an official motion to seal, supported by analysis/case law within **FIVE DAYS** of the entry of this Order.

Doc. No. [632]. In its response, the Government clarified certain matters in which "there may be genuine confusion," and otherwise objected to the Defendants' demands as "outside the scope of the Court's order, and irrelevant to determining whether Brady has been violated." Doc. No. [632], p. 2. Defendants filed a reply brief on June 19, 2019. Doc. No. [633].

On June 25, 2019, Defendants filed a Supplemental Brief and Motion to Compel Production of Brady Information from Customer Calls to the Government. Doc. No. [634]. On July 9, 2019, the Government filed a response to the Defendants' Brady motion (at Doc. No. [634]). Doc. No. [638].

On July 19, 2019, the Government filed a Brady review report. Doc. No. [644]. In this report, the Government indicated that it had "located several items that it is disclosing out of an abundance of caution," which it considered "cumulative." Doc. No. [644], pp. 2, 21.

On July 15, 2019, Defendants filed a "Motion and Incorporated Brief for Order Requiring Government to Correct its 'Shut-Down' Explanation or Show Cause why that Explanation is not False." Doc. No. [639]. In their motion, Defendants attach a letter (dated October 24, 2017) from a lawyer for a Sterling customer in which Defendants assert demonstrates that in October 2017,

9

AUSA Krepp knew that the customer response portal continued to operate and had not been shut down. Doc. No. [639], p. 2. In the letter, the attorney references the FBI's questionnaire and provides the link. Id.[8] In response to the Defendants' motion, the Government states that the letter at issue was disclosed to Defendants on July 20, 2018, prior to trial and that the letter does not prove that AUSA Krepp had knowledge that the FBI's questionnaire portal remained open. Doc. No. [673], p. 3. The Government further states: "[t]he letter references the portal and [the customer's] decision not to complete a questionnaire, but it does not indicate when she attempted to access the portal, or when she made the decision not to complete the questionnaire." Id. Defendants filed a reply brief thereafter. Doc. No. [676].

On July 19, 2019, the Government filed its Report of Brady Review. Doc. No. [644].[9]

---

[8] The Court was initially unable to locate a Government response to this motion. So, the Court ordered the Government to provide a response by March 12, 2020. Doc. No. [672].

[9] The Clerk's corresponding notation/remark indicates that a CD was also received.

10

On July 25, 2019, Defendants filed a reply brief in support of their "Post-Trial Motion on the Government's Violations of Brady and Violations of Discovery Orders." Doc. No. [647].

The Court's rulings on the pending motions are as follows.

At trial, Defendants' Renewed Motion to Compel Production of Brady Materials and Motion for Sanctions (Doc. No. [455]) was **GRANTED IN PART**. As indicated above, the Court **DECLINED** to find a Brady violation in regard to the late-produced documents at issue (i.e., emails between Sterling customers identified by the Government as victims); however, as verbally indicated at the September 6, 2018 hearing (Doc. No. [525-1]), Defendants' request for a re-review of the Government's files for any other Brady material was **GRANTED**.

Defendants' Motion to Compel *as supplemented at* Doc. No. [610] is **GRANTED IN PART and DENIED IN PART**. The motion (Doc. No. [610]) is **GRANTED IN PART** to the extent that it sought a delay of sentencing to allow the parties to complete a review and investigation and file supplemental briefs. By order dated April 17, 2019 (Doc. No. [617]), the Court **GRANTED** Defendants' alternative requests to order a separate and independent team of

11

Assistant United States Attorneys from this district to review the Government's entire case file for this action and turn over any additional Brady materials in the Government's possession—as well as Defendants' request to "order the government to produce all emails, other correspondence, and documents concerning its decision to 'shut-down' the pre-trial FBI questionnaire portal following Magistrate Judge Salinas' October 2016 Order." By separate order, the Court has **DENIED** Defendants' motions for new trial, as supplemented (Doc. Nos. [557], [558], [559], [565], [610], [618]).

Defendants' Motion to Compel *as supplemented* (concerning memorialized oral communications with victim coordinators and staff at the United States Attorney's Office or explanations for why they believe these calls do not contain any Brady material) (Doc. No. [634]) is **DENIED AS MOOT** as the Government's subsequently filed a Report of Brady Review (Doc. No. [644], p. 5) in which it indicates that its review included speaking with Victim-Witness staff, paralegal, case agents, and other investigative agency personnel. To the extent that the motion is not moot, this portion of the motion (at Doc. No. [634]) is **DENIED** as Defendants have not cited the Court to any guiding

12

authority that specifically requires a post-trial memorialization of oral communications from victims to victim coordinators and staff.

Defendants' Motion to Compel the Government to Comply with the Court's April 17, 2019 Order (Doc. No. [630]) and request that the Court require the Government to answer "discrete question identified in the briefing" is **DEEMED MOOT in part** by the Government's response at Doc. No. [632],[10] which clarified and provided answers to some of the questions and **to the extent not moot**, the motion is **DENIED** in the exercise of the Court's discretion as the Court has determined that its April 17, 2019 order has been satisfied by the Government.

Defendant's motion (Doc. No. [630]) to produce AUSA Krepp's website emails (submitted for *in cam*era inspection),[11] and produce any other documents that concern AUSA Krepp's asserted decision to shutdown the FBI

---

[10] In their reply brief, the Defendants acknowledged "[t]he Government Opposition now answers the three questions on page 5" of the motion at Doc. No. [630]. Doc. No. [633], p. 1.

[11] For purposes of perfecting the record, the Court notes that the documents were not actually filed under seal.  They have, however, been produced to the Court's chambers for an *in camera* inspection pursuant to the Court's prior order.  Doc. No. [655].

questionnaire portal[12] (Doc. No. [630]) is **DENIED**. The Court will maintain the documents at issue under a provisional seal; however, the Government must file an official motion to seal the documents (supported by analysis/relevant authority) within **FIVE DAYS** of the entry of this Order.

Defendants' "Motion and Incorporated Brief for Order Requiring Government to Correct its 'Shut-Down' Explanation or Show Cause why that Explanation is not False" (Doc. No. [639]) is **DENIED** in the exercise of the Court's instruction, as without more, Defendants' evidence and argument do not establish falsity.

Lastly, as the Court indicated in its prior order (Doc. No. [355], p. 3), the Court has considered the matter of sanctions against Assistant United States Attorney Thomas J. Krepp and his trial team; however, after review, the Court declines to engage the sanctions machinery. Nevertheless, the Court does deem it proper to write the following words in hopes that this ruling will have a "valuable prophylactic effect."[13]The Court is disappointed in some of the discovery and document production conduct of AUSA Krepp and his trial team

---

[12] These quotes are derived from Doc. No. [633], p. 11.

[13] See United States v. Aguilar, 831 F. Supp. 2d 1180, 1210 (C.D. Cal. 2011).

as it seems to the Court that there could have been additional steps taken to ensure that the circumstances that presently exist did not happen. Furthermore, in lieu of expressing indignation to Defendants' discovery correspondence and inquiries, it would have been more worthwhile, expedient, and efficient to have engaged in self-reflection[14] — then, thoroughly reviewed the discovery materials (no matter how voluminous) to make sure that the questions raised by Defendants had been addressed and all documents that fell within the potential Brady material umbrella were produced. This is what the Court expects and will continue to expect from any prosecutor representing the interests of the United States of America.

      **IT IS SO ORDERED** this 25th day of March, 2020.

                                          s/Steve C. Jones
                                          **HONORABLE STEVE C. JONES**
                                          **UNITED STATES DISTRICT JUDGE**

---

[14] See Connick v. Thompson, 563 U.S. 51, 65–66 (2011).